CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 8 2020

JULIA C. DUDLEY, CLERK
BY: /s/ A. Slagle
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PRESTON SCOTT FAGG, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19CV00161 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| PROGRESSIVE GULF INSURANCE ) | By: Hon. Glen E. Conrad |
| COMPANY, ) | Senior United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff Preston Scott Fagg seeks a declaratory judgment in diversity regarding insurance coverage from Progressive Gulf Insurance Company ("Progressive"), an Ohio corporation, after he purchased a car and was struck by an uninsured motorist soon thereafter. This matter is before the court on cross-motions for summary judgment regarding the ownership of a car and concomitant insurance coverage, which raise novel and surprisingly knotty questions of state law. The parties argued their well-briefed motions in a hearing before the court on December 2, 2019. For the reasons that follow, the court denies Fagg's motion for summary judgment and grants summary judgment for Progressive.

## Background

The material facts in this case are simple and stipulated. On April 29, 2016, Fagg paid Joseph Lee Horton $6,000.00 for the purchase of a 1999 Suzuki Vitara (the "Suzuki"). ECF Nos. 10-2 and 12-1, Stipulation of Facts ("SOF") ¶ 1. Fagg and Horton intended that Fagg purchase the Suzuki, and that Horton would have no further financial responsibility regarding the Suzuki. Id. ¶¶ 2, 14. Fagg took physical possession of the Suzuki on that same date. Id. ¶ 3.

Horton also signed the certificate of title[1] to the Suzuki, and delivered it to Fagg. Fagg and Horton intended that Horton convey title and complete ownership of the Suzuki to Fagg. Yet Fagg never presented the title for the Suzuki to the Virginia Department of Motor Vehicles ("DMV"). Id. ¶¶ 4–7. The title for the Suzuki contained a section, required by Virginia Code § 46.2-629, for Horton to certify that the mileage on the Suzuki's odometer was the actual mileage on the vehicle. Horton did not complete the odometer certification. ECF Nos. 10-1 at 2, 12 at 1.

Meanwhile, Horton had an auto insurance policy issued by Progressive, which was in effect at the relevant times (the "Policy"). The Policy included uninsured motorist coverage providing up to $100,000 of coverage per person, subject to the conditions of the Policy. SOF ¶¶ 12–13; ECF No. 12-1 at 5–58. Part C of the Policy defines the scope of that coverage. Under Sub-paragraph A of Part C, coverage is afforded for "damages which an 'insured' . . . is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' . . . ." An 'insured' is subsequently defined, in Sub-paragraph C, as:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1 or 2 above.

Sub-paragraph J of the Definitions section of the Policy defines "any vehicle shown in the Declarations" as a "covered auto." The Suzuki is listed on the Declarations Page of the Policy. ECF No. 12-1 at 6.

---

[1] A certificate of title is issued by the DMV and "shall contain a statement of the owner's title and of all liens or encumbrances on the motor vehicle . . . described in the certificate and whether possession is held by the owner under a lease, contract, or conditional sale or other like agreement." It "shall also contain forms of assignment of title or interest and warranty of title with space for notation of liens and encumbrances on the motor vehicle . . . at the time of a transfer." Va. Code Ann. § 46.2-604.

The day after he bought the Suzuki, and while driving it, Fagg had the misfortune of being struck by an uninsured motorist. He sustained serious injuries. SOF ¶¶ 8–10.

## Statutory Background

The parties' motions and arguments rely in large part on Virginia's statutes covering the titling of motor vehicles. Va. Code Ann. § 46.2-600 et seq. The court includes certain statutory provisions in relevant part for ease of reference.

Virginia Code § 46.2-620, which is titled "Period of validity of certificate of title," states:

> Every certificate of title issued under this chapter shall be valid for the life of the motor vehicle . . . so long as the owner to whom it is issued shall retain legal title or right of possession of or to the vehicle. Such certificates need not be renewed except on a transfer of title or interest of the owner.

Virginia Code § 46.2-628, which is titled "How certificate of title transferred," states:

> The owner of a motor vehicle . . . registered under this chapter, when transferring or assigning his title or interest thereto, shall fully and correctly endorse the assignment and warranty of title on the certificate of title of the motor vehicle . . . to its purchaser, with a statement of all security interests on it, and shall deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle, . . . . Any owner who willfully fails fully and correctly to endorse the assignment and warranty of title shall be guilty of a Class 3 misdemeanor.

Virginia Code § 46.2-629, which is titled "Odometer reading to be reported on certificate of title, application, or power of attorney," states:

> A. Every owner or transferor of any motor vehicle, including a dealer, shall, at the time of transfer of ownership of any motor vehicle by him, record on the certificate of title, if one is currently issued on the vehicle in the Commonwealth, and on any application for certificate of title the reading on the odometer or similar device . . . at the time of transfer. . . .
>
> B. The Department shall not issue to any transferee any new certificate of title to a motor vehicle unless subsection A has been complied with.

3

Virginia Code § 46.2-630, which is titled "Transfer and application for certificate of title forwarded to Department," states:

> The transferee shall write his name and address in ink on the certificate of title and ... shall within thirty days forward the certificate to the Department with an application for the registration of the motor vehicle ... and for a certificate of title.

Insurance law in Virginia is also heavily regulated by statute. For example, Virginia Code § 38.2-303, titled "Insurable interest required; property insurance," provides that:

> A. No insurance contract on property or on any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the property insured.
>
> B. As used in this section, "insurable interest" means any lawful and substantial economic interest in the safety or preservation of the subject of insurance free from loss, destruction or pecuniary damage.

In addition, Virginia's uninsured motorist statute requires that every auto policy contain an endorsement or provisions "undertaking to pay the insured all sums that he is legally obligated to recover as damages from the owner or operator of an uninsured motor vehicle." Va. Code Ann. § 38.2-2206(A). The statute also defines "insured" as follows:

> "Insured" as used in subsection[] A ... of this section means the named insured, and while a resident of the same household, the spouse of the named insured, and relatives, wards or foster children of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

Va. Code Ann. § 38.2-2206(B).

### Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Levine v. Employers Ins. Co. of

4

Wausau, 887 F.3d 623, 627 (4th Cir. 2018). Because this case is before the court on diversity jurisdiction, Virginia law governs any substantive issues. Id. "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1002 (4th Cir. 1998).

When interpreting statutes, courts applying Virginia law must "ascertain and give effect to the intention of the legislature." Chase v. DaimlerChrysler Corp., 587 S.E.2d 521, 522 (Va. 2003). "That intent is usually self-evident from the words used in the statute. Consequently, courts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result." Boynton v. Kilgore, 623 S.E.2d 922, 925–26 (Va. 2006) (internal citations and footnotes omitted); Manu v. GEICO Cas. Co., 798 S.E.2d 598, 602 (Va. 2017) (same, regarding uninsured motorist statutes).

## Discussion

### I. FAGG OWNED THE SUZUKI AT THE TIME OF THE ACCIDENT

Fagg's primary argument is that Horton's failure to complete the odometer certification made his attempt at assigning title to Fagg ineffective. Progressive argues that the transfer was completed. For the reasons stated below, the court concludes that Horton transferred ownership of the Suzuki to Fagg before the accident occurred. Binding Virginia precedent and a plain-text reading of the relevant statutes mandate this result.

The Supreme Court of Virginia has found few occasions to address vehicle title transfers, which are now governed by statute. In Nationwide Insurance Company v. Storm, the buyer and seller of a car had an agreement, which involved a payment plan ending on a Saturday, and where the parties would transfer title on the next Monday. 106 S.E.2d 588, 588 (Va. 1959). The buyer

had taken possession of the car at the time he began payments, and got into a car accident the day before the parties were to exchange title, i.e., on the Sunday after he made all payments on the vehicle. Id. at 589. The Court also found that the seller of the car was not the true title-holder of the car: he was a minor, and the title of the car was held by the seller's mother, and her authority was required to transfer title. Id. The buyer sued the seller's mother's insurance company, seeking coverage.

As in this case, the insurance company argued that the formal elements of a title transfer need not have happened in order to transfer ownership of a car. Id. However, the Supreme Court of Virginia noted that prior decisions had held that "in order to complete the sale upon his part it is essential that the seller conform to the statutory requirement by delivering to the purchaser a proper assignment of title." Id. (citing Thomas v. Mullins, 149 S.E. 494, 497 (Va. 1929)). Ultimately, the Court held that ownership of the car remained with the seller's mother because the title had not been transferred, and that the car was covered by her insurance policy. Id. at 589–90.

Some forty years later, in Allstate Insurance Company v. Atlanta Casualty Company, the Court addressed the issue of whether an assignment of title is valid when the transferee's name is left blank on the relevant certificate of title. 530 S.E.2d 161 (Va. 2000). The Court began its analysis by quoting Virginia Code § 46.2-630, which requires that "[t]he *transferee*"—not the transferor—"shall write his name and address in ink on the certificate of title and . . . shall within thirty days forward the certificate to the Department with an application for the registration of the motor vehicle . . . and for a certificate of title." Id. at 165 (emphasis added in opinion). "Thus," the Court reasoned, the seller's "failure to complete the assignment of title by entering the name of the transferee on the certificate of title does not, per se, defeat the transfer of her ownership of the [vehicle]." Id.

The Court then looked to "the specific circumstances" of the case to determine whether ownership had been transferred. First, the Court stated: "In order to effect a transfer of the ownership of a motor vehicle, two things are required: (1) the owner must actually deliver the endorsed certificate of title to the transferee, and (2) the owner must deliver possession of the vehicle to the transferee." Id. at 165 (citing Storm, 106 S.E.2d at 589–90). In that case, the Court concluded that the seller had done all that was needed to transfer title to the relevant vehicle. Id. The Court also mentioned, in a footnote strongly emphasized by Fagg, that

> Code § 46.2–629 also requires the owner to enter the vehicle's odometer reading on the certificate of title at the time of transfer. . . . The certificate of title to the Buick was not produced as an exhibit at trial and the record is silent as to whether the odometer reading was recorded thereon. However, as the issue was not raised before the chancellor, we do not consider it on appeal. Rule 5:25.

Id. at n.3.

### a. Horton's Failure to Complete the Odometer Certification Was Not a Per Se Bar to a Transfer of Ownership under Virginia's Motor Vehicle Statutes

The court begins by examining whether Horton's failure to complete the odometer certification was a per se bar to Horton transferring title to the Suzuki to Fagg. Because Allstate is not factually on all fours with the instant case, the court looks to Fagg's statutory arguments. This court also considers that the Allstate Court's reasoning heavily relied on the statutory provision requiring that a transferee enter the name of a vehicle's ultimate owner. Allstate, 530 S.E.2d at 165. The opposite is true for the odometer certification, which must be filled out by a vehicle's transferor. Va. Code Ann. § 46.2-629 (requiring certification by "[e]very owner or transferor of any motor vehicle, including a dealer, . . . at the time of transfer of ownership of any motor vehicle by him"). However, this court examines the relevant statutes in this case through the lens of the Allstate opinion, because "[a] state's highest court need not have previously decided

7

a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion." Neil, 160 F.3d at 1002.

Fagg argues that Virginia's statutes require this court to hold that the transfer of the Suzuki from Horton was incomplete. Virginia Code § 46.2-628 provides that, when a seller transfers title of a vehicle, the seller "shall fully and correctly endorse the assignment and warranty of title on the certificate of title of the motor vehicle . . . to its purchaser, with a statement of all security interests on it, and shall deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle . . . ." Section 46.2-629 follows, and provides that a seller must also enter an odometer reading on the certificate of title. According to Fagg, § 46.2-628 does not spell out how a seller is to "fully and correctly" endorse a certificate of title, and thus, the court should import the odometer certification requirement of 46.2-629 for meaning of that phrase to avoid treating those words as surplusage. The court disagrees.

Instead, the court concludes that the clearest interpretation of § 46.2-628 is that the phrase "fully and correctly" relates to the words immediately following it: "the assignment" and "warranty of title." Va. Code Ann. § 46.2-628. Ambiguous words in a statute "may be determined by reference to their association with related words and phrases." Andrews v. Ring, 585 S.E.2d 780, 784 (Va. 2003). Properly read, § 46.2-628 provides that a seller of a vehicle must "fully and correctly" assign the vehicle in a legally enforceable way, and warrant that the buyer will be able to take legal title to the vehicle, before a certificate of title can be transferred. Facing this clear and plain text, the court declines to effectively insert "and the odometer certification" after the words "the assignment" and "warranty of title" into the statute. See Smith v. Horn, 351 S.E.2d 14, 18 (Va. 1986) ("We believe that, had the General Assembly intended to exclude motor vehicle accidents from the coverage of the Workers' Compensation Act, it would have done so directly in

8

the Act itself rather than indirectly through a provision in the insurance title of the Code.").

Furthermore, the specific meaning of "the assignment" and "warranty of title" can be found in Virginia caselaw, and thus the court should look to the common law for their meaning. Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc., 784 S.E.2d 280, 283 n.4 (Va. 2016) ("A statute touching on matters of common law must be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.") (internal quotation marks and citation omitted). As a result, the court's decision to not include the odometer certification into the meaning of "fully and completely" will not render them surplusage.

As described above, the Supreme Court of Virginia set the requirements for assigning ownership of a vehicle in the typical case: delivering an endorsed certificate of title and the vehicle itself to the buyer. Allstate, 530 S.E.2d at 165; see also id. n.4 (describing certain dealer transfers to which this rule does not apply). In addition, Virginia's commercial codes define a warranty of title as an agreement for a seller to bear the risk of error in promising that it holds good title to the item sold, that the transfer is "rightful," and that all known security interests and encumbrances are disclosed to the buyer. Va. Code Ann. § 8.2-312. To illustrate this latter requirement, in Silvey v. Johnston, the Court held that the buyer of a car had a claim for breach of the warranty of title of a car where the seller entered an incorrect vehicle identification number ("VIN") on a certificate of title, and the buyer was unable to obtain a good title and resell the vehicle thereafter. 70 S.E.2d 280, 281–82 (Va. 1952). The Court concluded that the seller had an obligation to "secure a marketable title" for the buyer so that the buyer could dispose of the vehicle. Id.[2]

---

[2] Fagg did not raise the argument that Horton's failure to complete an odometer certification might inhibit his ability to later sell the Suzuki. See Va. Code Ann. §§ 46.2-616 and 617 (prohibiting purchase of vehicle without a certificate of title issued to its owner). Waiver aside, the court concludes that Silvey is distinguishable because a VIN identifies an individual vehicle, which as a result of mislabeling, the buyer in Silvey did not actually own. 70 S.E.2d

The court's decision not to incorporate the odometer certification requirement of § 46.2-629 into § 46.2-628 is bolstered by looking to the statutory punishments for violations of each section. For example, a violation of § 46.2-628 is a Class 3 misdemeanor. In contrast, failure to abide by § 46.2-629 prevents the DMV from issuing the seller a new certificate of title, and may also result in a Class 1 misdemeanor. Prescribing different punishments for violations of these provisions and describing the odometer certification requirement in § 46.2-629, but not § 46.2-628, indicates a legislative intent to read the provisions apart. See Zinone v. Lee's Crossing Homeowners Ass'n, 714 S.E.2d 922, 925 (Va. 2011) (When the Virginia General Assembly "has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code," courts applying Virginia law "must presume that the difference in the choice of language was intentional.").

Most tellingly, neither provision mentions the right of a buyer to void or rescind a transaction. The court therefore infers no legislative intent for the odometer certification requirement in § 46.2-629 to act as a prerequisite for a title transfer under § 46.2-628. If the legislature had wished to include such a requirement, it would have. See Forst v. Rockingham, 279 S.E.2d 400, 404 (Va. 1981) ("If the General Assembly had intended to use the term 'agricultural products,' it would have done so.").

At bottom, Fagg relies on the argument that his at least <u>temporary</u> inability to obtain a new certificate of title negates the title transfer of a vehicle. Fagg maintains that, because at the time of the accident he would not have been permitted to receive a new certificate of title, the transaction to purchase the Suzuki was incomplete. Again, the court disagrees.

---

at 281. In contrast, an odometer certification may be more properly understood as a proxy for a vehicle's mechanical condition. Moreover, the court in Silvey held that the proper remedy was damages from the seller, not a voiding of the transfer. Id. at 282–84.

10

The court, however, recognizes an apparent tension in the Supreme Court of Virginia's jurisprudence. In 2000, the Court held that "the failure to apply for a new certificate of title does not void the transfer of ownership of a motor vehicle." Allstate, 530 S.E.2d at 166 (citing Va. Code Ann. § 46.2-630). Yet in 1942, the Court stated "[o]nce the vehicle is registered, legal title can be transferred only by the Motor Vehicle Commissioner." Universal Credit Co. v. Botetourt Motor Co., 21 S.E.2d 800, 805 (Va. 1942). The court will adhere to the Court's more recent statement in Allstate, and attributes some tension to evolution in Virginia's Motor Vehicle Code over the intervening decades.

Fagg also argues that the Supreme Court of Virginia's mention of the odometer requirement in footnote three of the Allstate opinion should persuade the court that an odometer certification is a mandatory condition of a vehicle title transfer. The court declines to follow Fagg's reasoning. To begin, in Allstate, the Court concluded that it could establish the requirements of transferring title to a vehicle without considering whether the relevant odometer certification had been completed, and set forth a rule that does not mention any such requirement. Allstate, 530 S.E.2d at 165. Applying Fagg's reasoning would require an expansive reading of inferences arising from dicta in a footnote of a recent, concise, and well-reasoned state-law opinion. Without more, and following a plain text reading of the relevant statutes, the court cannot conclude that the Supreme Court of Virginia would adopt Fagg's interpretation. See Manu, 798 S.E.2d at 604 (cautioning reliance on dicta).

Moreover, a reading of the current statutes requiring the registration of vehicles further supports the court's conclusion. For example, Virginia Code § 46.2-600 mandates that "every person who owns a motor vehicle . . . shall, before it is operated on any highway in the Commonwealth, register with the [DMV] and obtain from the [DMV] the registration card and

11

certificate of title for the vehicle" within thirty days. Similarly, Virginia Code § 46.2-630 grants the buyer of a vehicle thirty days to obtain a certificate of title. Thus, the General Assembly differentiated between a certificate of title and legal ownership of a vehicle, and plainly anticipated situations in which a person would at least temporarily own a car, but not hold a new certificate of title.

Looking to the specific facts of this case, Fagg's accident occurred one day after Horton delivered the Suzuki and the endorsed certificate of title to him. Under Virginia Code §§ 46.2-600 and 46.2-630, Fagg still had twenty-nine days in which to seek a new certificate of title from the DMV. Therefore, as the Supreme Court of Virginia held in Allstate, Horton's apparently inadvertent failure to fill out the odometer certification on the Suzuki's certificate of title—which might have later prevented Fagg from obtaining a new certificate of title if the error was not rectified—did not defeat the transfer of Horton's ownership of the vehicle to Fagg.

In conclusion, the court holds that Horton's failure to complete the odometer certification requirement of Virginia Code § 46.2-629 was not a per se bar to the transfer of ownership of the Suzuki to Fagg under Virginia Code § 46.2-628. The court declines to decide whether, if the statutory period had expired or if a seller had expressly refused to provide an odometer certification, such a bar to a title transfer would or would not exist. Rather, the court draws its opinion narrowly because this is a question of state law without a clear precedent.

b. **Horton Transferred Ownership of the Suzuki to Fagg Under Allstate**

Having held that Horton could have transferred the Suzuki to Fagg, the court looks to "the specific circumstances in this case" to determine ownership of the vehicle. Allstate, 530 S.E.2d at 165. In this case, as in Allstate, the court concludes that Horton performed all necessary actions to transfer ownership of the Suzuki to Fagg.

On April 29, 2016, in exchange for Fagg's payment of $6,000, Horton endorsed the certificate of title and delivered that signed certificate to Fagg along with physical possession of the Suzuki. SOF ¶¶ 1, 3, 4. Consequently, Horton transferred title of the Suzuki to Fagg, under the test used by the Supreme Court of Virginia in Allstate. While the Court reached a different result in Storm, that case is distinguishable. In Storm, unlike this case, the seller had yet to endorse and deliver the relevant vehicle title to its buyer. 106 S.E.2d at 589.

In sum, the court holds that Horton no longer held legal title to the Suzuki at the time of the accident in which Fagg was injured. Instead, title to the Suzuki had transferred to Fagg because Horton endorsed and delivered the certificate of title to Fagg, and Fagg took physical possession of the vehicle.

## II. FAGG WAS NOT AN INSURED UNDER THE POLICY

The court next examines whether Fagg was an insured under Policy, although both parties agree that this question is largely determined by the question of ownership. Fagg argues that title to the Suzuki remained with Horton at the time of the accident, and as a result, Horton's Policy provided Fagg with uninsured motorist coverage at the time of the accident. Progressive argues that Horton had no insurable interest in the Suzuki and no authority to grant Fagg use of the vehicle, having transferred title to the vehicle. The court agrees with Progressive.

Virginia Code § 38.2-303 requires that any person seeking to benefit from an insurance contract must have an "insurable interest" in the relevant property. As held above, Fagg—not Horton—owned the Suzuki at the time of the accident. In accordance with that transfer, "[Fagg] and Horton did not intend for Horton to retain any ownership interest in the Suzuki." SOF ¶ 6. Meanwhile, the Policy was held in Horton's name. Thus, Horton had no insurable interest in the Suzuki, and the Policy did not apply to the vehicle, at the time of Fagg's accident.

13

Fagg also argues that he was an "insured" because Horton gave him consent to use the Suzuki. The court first looks to Virginia's uninsured motorist statute, which is incorporated into the Policy. See ECF No. 12-1 at 22 (stating that uninsured motorist coverage shall be provided "in accordance with Va. Code Ann. Section 38.2-2206"). Vehicle insurance coverage for damages resulting from an uninsured motorist is required by Virginia Code § 38.2-2206(A). Under Virginia Code § 38.2-2206(B), an insured "means the named insured and, while resident of the same household, the spouse of the named insured, and relatives, wards or foster children of either, while in a motor vehicle or otherwise," as well as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above." Fagg is not a named insured on the Policy, and no facts show that Fagg was otherwise related to Horton in a way that might grant him "insured" status.

Finally, because Horton had no remaining interest in or control of the Suzuki, he had no authority to grant Fagg "express or implied consent" to use the vehicle. See Virginia Auto Mut. Ins. Co. v. Brillhart, 46 S.E.2d 377, 380 (Va. 1948) ("'Permission' or 'consent' to use or drive a car within the meaning of such a provision must come from someone who is in a position to give or grant it. His relation to or control over the car must be such that he has a right to give or withhold the permission or consent to use it."); see also Travelers Indem. Co. v. Nationwide Mut. Ins. Co., 227 F. Supp. 958, 961–62 (W.D. Va. 1964) (holding that seller could not grant permission to use vehicle for purposes insurance policy where he "had divested himself of all authority and control" of the vehicle in the course of selling it). Accordingly, Fagg was not an "insured" under the Policy at the time of the accident.

## Conclusion

For the reasons stated, the court denies Fagg's motion for summary judgment and grants Progressive's motion for summary judgment: Fagg is not entitled to insurance coverage under the Policy.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 8th day of January, 2020

_____
Senior United States District Judge